UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

ANNIE O. and HERBERT E. LEWIS,

　　　　　　Plaintiffs,

　　　v.　　　　　　　　　　　　　　　　　　Case No. 09-cv-641-JPG

AETNA INSURANCE AGENCY, INC.,
*also known as ING Insurance Services*,
SHERWIN WILLIAMS COMPANY AS
PLAN ADMINISTRATOR, and SHERWIN
WILLIAMS SALARIED MEDICAL PLAN,

　　　　　　Defendants.

## MEMORANDUM AND ORDER

　　　　This matter comes before the Court on the parties' cross-motions for summary judgment. Specifically, Plaintiffs filed a Motion for Summary Judgment and Memorandum in Support Thereof (Doc. 75), to which Defendants submitted a Response (Doc. 79).  Defendants also filed a Motion for Summary Judgment (Doc. 76) and Memorandum in Support Thereof (Doc. 77), and Plaintiffs tendered a Response (Doc. 78) thereto.  In addition, this matter comes before the Court on Defendants' Motion to Strike (Doc. 83), to which Plaintiffs filed a Response (Doc. 84).

　　　　For the following reasons, the Court, *inter alia*, **DENIES** the Plaintiffs' summary judgment motion, **GRANTS in part** and **DENIES in part** Defendants' summary judgment motion, and **GRANTS in part** and **DENIES in part** Defendants' motion to strike.

## BACKGROUND

**I.　　Facts**

　　　　In analyzing a motion for summary judgment, the reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath v.*

*Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The Court, construing the evidence and all reasonable inferences in the light most favorable to Plaintiffs, finds as follows:

Over the last nine years, Plaintiff Herbert Lewis (hereinafter individually referred to as "Herbert") has worked for Defendant Sherwin Williams Company (hereinafter "Sherwin Williams")[1] in its paint and stain production facility in Flora, Illinois.  He currently works in general production, and his duties include putting labels on cans and packing products into boxes.

As part of his employee benefits package, Herbert is a participant in the company's health plan, namely the Defendant Sherwin Williams Salaried Medical Plan (hereinafter "the Plan").  Sherwin Williams is the administrator of the Plan, and Defendant Aetna Insurance Agency, Inc. (hereinafter "Aetna") is the Plan's fiduciary and claims administrator in charge of reviewing claims filed thereunder.  To retain coverage under the Plan, Herbert has to make copayments and/or pay coinsurance.  At all times relevant to this litigation, Herbert fulfilled all of his payment obligations under the Plan.  Further, at all relevant times, Herbert's wife, Plaintiff Annie Lewis (hereinafter individually referred to as "Annie"), was a dependent and beneficiary under the Plan.

On December 17, 2006, Herbert and Annie (hereinafter collectively referred to as "the Lewises") went horseback riding.  Annie eventually came upon a limb on the trail.  In her effort to avoid the limb, Annie's saddle broke, and she fell off her horse.  She was taken for treatment at Clay County Hospital, which transferred Annie to a hospital in Mt. Vernon, Illinois, that same day.  There, doctors reported that she had two broken ribs and a broken collarbone.  When her

---

[1]Sherwin Williams is named a defendant only in its capacity as administrator of the medical plan at issue.

collarbone did not heal, doctors referred Annie to the Bonutti Clinic in Effingham, Illinois.  On March 6, 2007, Annie underwent surgery on her collarbone at St. Anthony's Hospital in Effingham, Illinois.  By the time of Annie's release from care on May 21, she had incurred medical bills that spanned December 17, 2006, to May 30, 2007, and totaled $38,165.92.

In light of Annie's hefty medical bills, the Lewises began calling Aetna in March 2007.  Aetna informed them that the claims were not yet being paid due to questions about Annie's preexisting conditions and other health insurance.  Rather than formally denying these claims, Aetna "pended" them until it could satisfactorily conclude the requisite investigation.[2]  To move this investigation along, Annie submitted forms on multiple occasions that indicated she had no medical insurance other than the Plan.

Despite the "pended" status of Annie's claims, the Bonutti Clinic sued the Lewises in April 2008, and St. Anthony's Hospital and Clay County Hospital sued the Lewises in August 2008.  The Bonutti Clinic received a judgment in its favor in the amount of $6,497.77, and St. Anthony's Hospital and Clay County Hospital received a judgment in their favor in the amount of $13,756.11.  Having grown increasingly frustrated with Aetna's failure to pay and its consequences, Herbert turned to the human resources officer at Sherwin Williams.  Dissatisfied with the efforts of the human resources department, Herbert thereafter retained attorney Bryan Robbins (hereinafter "Robbins").

On December 2, 2008, Robbins spoke with an Aetna customer service representative

---

[2]The parties dispute whether the claims were actually "pended" or denied.  While the Lewises have put forth *some* evidence that they and their creditors had been told that Annie's claims were denied, (*see, e.g.*, Doc. 75-7, p. 6; Doc. 75-6), the record overwhelmingly demonstrates that Aetna "pended" the claims.

Regardless, as will be seen, this factual contention is of no consequence.

over the phone to see what needed to be done in order for Annie's claims to be processed.  That same day, Robbins sent a letter to the representative that requested an explanation of Aetna's "denial" of Annie's medical bills.  On December 9, Robbins spoke with the representative on the phone to confirm receipt of his letter, which she acknowledged.  Robbins' subsequent calls to the representative were unsuccessful, and he was frequently referred to another representative of Aetna.  Robbins sent another letter on February 6, 2009, in an effort to address the concerns previously voiced by Aetna representatives.  In April 2009, an Aetna representative informed Robbins that the Lewises' claims had been referred to the company's legal department.  Sometime during the next month, Robbins learned that, while some of the bills had been paid, a significant amount remained untouched.  He subsequently drafted a third letter on May 22, 2009.  Like the two before it, Robbins never received a response to this letter.

The Lewises and Robbins all believe that Aetna never provided a written explanation regarding its non-payment of Annie's medical bills.  The Lewises, however, concede that neither they nor their attorney made a written request for information from Sherwin Williams.

Between March 2007 and approximately March 2009, Aetna completed its investigation into Annie's claims and made a number of payments thereon.  Specifically, the company reduced the claims by $3,523.46 in accordance with the applicable provider agreement, paid $23,978.63 on the claims, and informed the Lewises that they owed $6,291.89 in copayments and coinsurance.  With respect to Aetna's total payment of $23,978.63, the company paid $12,351.95 of this amount before December 2, 2008, $11,622.48 of this amount between December 2, 2008 and March 2009, and $4.20 of this amount on December 21, 2009.[3]  As Aetna

---

[3]Aetna paid most of the claims of Clay County Hospital on September 18, 2008 (dates of service were from December 17, 2006, to January 24, 2007), most of the claims

4

periodically satisfied Annie's claims, it sent the Lewises several written "Explanation of Benefits" (hereinafter "EOBs").  These EOBs explained the payments and adjustments made by Aenta and identified the portions of Annie's claims for which the Lewises bore responsibility. The EOBs also informed the Lewises of their appeal rights, which they never invoked.  Instead, they sued.

## II.    Relevant Procedural Posture

On July 7, 2009, the Lewises had Robbins file suit in Clay County, Illinois, alleging a sole breach of contract claim against Aetna.  At that time, the Lewises sought to recover $34,328.37 (Aetna had allegedly paid $3,837.55 prior to suit).  Aetna thereafter removed the matter to this Court on the grounds that the Lewises' claims were preempted by the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. § 1001, *et seq*.

After retaining new counsel, the Lewises eventually filed an Amended Complaint (Doc. 27), which remains the operative complaint in this litigation.  This complaint not only added Sherwin Williams and the Plan as defendants but pled six separate claims for relief.  These claims are as follows: engagement in arbitrary and capricious actions by Aetna (Count I); violation of ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B), by the Plan (Count II), and; violation of ERISA § 502(c)(1), codified at 29 U.S.C. § 1132(c)(1), by Aetna and Sherwin Williams (Counts III-VI).  More specifically, Count III is an action by Annie against Aetna for violation of ERISA § 502(c)(1), Count IV is an action by Herbert against Aetna for violation of ERISA § 502(c)(1), Count V is an action by Annie against Sherwin Williams for

---

of the Bonutti Clinic in February or March 2009 (dates of service were from January to April 2007), and most of the claims of St. Anthony's Hospital on February 26, 2009 (date of service was March 6, 2007).

violation of ERISA § 502(c)(1) and Count VI is an action by Herbert against Sherwin Williams

for violation of ERISA § 502(c)(1).  With respect to Counts III-VI, the Lewises seek the

maximum statutory penalty and attorneys' fees and costs.

The Lewises now move for summary judgment on Counts III-VI, and Defendants move

for summary judgment on all counts.  Both assert several theories to justify the relief sought.

## ANALYSIS

Following a general overview of the law governing summary judgment, the Court will

delve into the relevant law surrounding each of the Lewises' ERISA claims.

## I.      Summary Judgment Generally

Summary judgment is proper where "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2);

*see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*,

211 F.3d 392, 396 (7th Cir. 2000).  In responding to a summary judgment motion, the

nonmoving party may not simply rest upon the allegations contained in the pleadings but must

present specific facts to show that a genuine issue of material fact exists.  Fed. R. Civ. P.

56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir.

1996).

A genuine issue of material fact is not demonstrated by the mere existence of "some

alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986), or by "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists

only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence

6

presented." *Anderson,* 477 U.S. at 252.

## II.    Counts I and II Are Duplicitous, Thereby Mandating Dismissal of Count I

As Defendants rightfully point out, the only real difference between Counts I and II is that Count I is brought against Aetna and Count II is brought against the Plan.   Although Count I is captioned as a claim for "arbitrary and capricious actions," (Doc. 27, p. 3), the operative complaint makes clear that Counts I and II are civil actions for violations of ERISA § 502(a)(1)(B).  *Id.* at 1, ¶ 1.  More precisely, Count I is a claim under ERISA § 502(a)(1)(B) that alleges Aetna's actions fell below the arbitrary and capricious standard articulated in the medical plan at issue.  (*See* Doc. 2-4, p. 65) ("Aetna may not abuse its discretionary authority by acting arbitrarily and capriciously.").

In ERISA benefits cases, the plan is typically the proper party — not the employer.  29 U.S.C. § 1132(d)(2) (2006); *Garratt v. Knowles*, 245 F.3d 941, 949 (7th Cir. 2001) (affirming dismissal of complaint against employer for benefits under a retirement plan and leaving open the option of bringing suit against the plan as an entity); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996).  While a plaintiff may be able to sue the employer, he must show that the plan and employer are closely intertwined and that the employer is the plan administrator.  *Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001) (wherein plaintiff insisted he did not seek any relief from the plan).

Here, the Lewises have not argued or put forth evidence regarding any significant interrelationship between the Plan and Aetna, at least to the extent contemplated by *Mein* and its progeny.  Rather, their response to Defendants' motion contends that Count I should stand because Aetna breached its fiduciary duties a la ERISA  § 404, codified at 29 U.S.C. § 1104. Section 404 actions are brought under ERISA § 409, codified at 29 U.S.C. § 1109, or ERISA §

7

502(a)(3), codified at 29 U.S.C. § 1132(a)(3).  *Mondry v. Am. Family Mut. Ins. Co.*, No. 06-C-320-S, 2006 WL 2787867, at *4 (W.D. Wis. Sept. 26, 2006); *see also Adamczyk v. Lever Bros. Co., Div. of Conopco*, 991 F. Supp. 931, 933 (N.D. Ill. 1997).   However, nowhere in the operative complaint did the Lewises allege a breach of fiduciary duty against Aetna[4] or cite to ERISA § 409 or § 502(a)(3).  The Lewises chose their means to the relief sought, and they are now stuck with the claims contained in the amended complaint.  Moreover, binding precedent dictates that the Lewises cannot seek relief under ERISA § 502(a)(3) because they can seek and are seeking relief under ERISA § 502(a)(1)(B).  *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996); *Clark v. Hewitt Assocs., LLC*, 294 F. Supp. 2d 946, 950 (N.D. Ill. 2003) ("Plaintiff . . . does have the *right* to bring a claim under § 1132(a)(1)(B), regardless of its merits; therefore, she may not seek relief under § 1132(a)(3).") (emphasis in original).

Put simply, Counts I and II are duplicitous, and the Court subsequently **DISMISSES** Count I **with prejudice**.

---

[4]The only language in the operative complaint hinting at a breach of fiduciary duty is as follows:

> Aetna failed to follow the procedures required by 29 CFR 2560.503-1 in that: Aetna unduly inhibited and hampered the processing of claims for benefits by continuously requesting the same information previously provided by Plaintiffs; Aetna's claim denials were not in accordance with the Summary Plan Description; Aetna failed to notify the Plaintiffs of an adverse determination at a time sufficiently in advance of the denial of services; Aetna failed to provide Annie Lewis with an appeal of the adverse determination or a full and fair review of the adverse determination.

(*See* Doc. 27, p. 4-5, ¶ 24).  The Court, however, is convinced that this language only relates to the alleged arbitrary and capricious breach of the medical plan at issue.  Again, the Court will not allow a claim where one has not been asserted.

**III.    Genuine Issues of Material Fact Exist with Respect to Count II**

ERISA § 502(a)(1)(B) holds that "[a] civil action may be brought by participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B) (2006).

Here, the Plan cites the affidavit of Kathy Stollings, Senior Customer Service Rep for Aetna's Natl Accounts Customer Operations, as evidence that almost all of the Lewises' claims were paid several months before they brought legal action against the company.  The Lewises cannot and do not argue that the Plan paid a large number of their claims, but they do dispute several of the Plan 's purported payments.

First, the Lewises argue that Salem-Flora Radiology never received a $542.00 (or $433.60 after negotiations with the provider) payment that the Plan claims was made.  To support their argument, the Lewises have attached an affidavit from Sara Harris, who assists the office manager of Salem-Flora Radiology, that states the provider has yet to receive payment from the Plan .  The Court is satisfied with the competency of Sara Harris and the contents of said affidavit.  Accordingly, there is a genuine issue of material fact as to whether the Plan paid Salem-Flora Radiology the $542.00 (or $433.60) it claims.

Similarly, the Lewises argue that the Plan has not properly paid the Bonutti Clinic.  For support, the Lewises cite a letter from the Bonutti Clinic's attorney that states the amount paid by the Plan as of November 5, 2009.  Indeed, this amount is less than the Plan alleges to have paid.  The letter also states the balance owed by the Lewises.  After subtracting costs, fees, and interests, this balance is greater than what the Plan claims is owed in copayments and coinsurance.  These discrepancies create another genuine issue of material fact, namely whether

9

the Plan still owes money to the Bonutti Clinic.

The remainder of the Lewises' argument concerning Count II is that the Plan's arbitrary and untimely processing of Annie's claims unnecessarily led to their liability to the Bonutti Clinic, St. Anthony's Hospital, and Clay County Hospital for post-judgment interest, court costs, and attorneys' fees. There is evidence that Aetna did not process Annie's claims in a timely manner; nevertheless, this untimeliness does not impute additional liability to the Plan in an action for benefits. The scope of relief of ERISA § 502(a)(1)(B) is confined to a participant or beneficiary's recovery of benefits or enforcement/clarification of rights under a plan. This equitable relief scheme means that ERISA § 502(a)(1)(B) does not provide for compensatory damages, monetary damages, or extracontractual relief. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1491 (7th Cir. 1996) (wherein plaintiff wrongfully sought compensatory damages, medical expenses, pain and suffering, and lost wages under ERISA); *Harsch v. Eisenberg*, 956 F.2d 651, 656 (7th Cir. 1992) (wherein plaintiffs wrongfully sought compensation for injuries directly resulting from administrator's alleged breach of fiduciary duty).

While the instant case is not factually analogous to *Jass* or *Harsch*, the doctrines promulgated by those Seventh Circuit decisions have preclusive effect on the Lewises' ERISA § 502(a)(1)(B) claim. Any claim against the Plan that relates to judgments in favor of the Lewises' creditors is purely monetary or compensatory. Even if such a claim could be deemed equitable, it is not recoverable in an action for benefits under ERISA § 502(a)(1)(B). The Lewises do not argue or cite any authority to the contrary, and the Court will not do so for them. It is for these reasons that no genuine issue of material fact exists with respect to the civil judgments against the Lewises.

10

In sum, apart from Annie's claims regarding Salem-Flora Radiology and the Bonutti Clinic for which genuine issues of material fact exist, Count II is effectively moot because the Plan has provided the relief allowable to the Lewises. *See Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1038 n.5 (7th Cir. 1990) (holding that the case was not moot because defendant had not provided all relief requested by plaintiff).

## IV.    Herbert Lacks Constitutional Standing to Continue as a Plaintiff in This Case

The foregoing disposes of yet another issue raised by the parties: Herbert's standing. The Lewises argue that Herbert has constitutional standing to be in this case because of the judgments achieved by the Bonutti Clinic, St. Anthony's Hospital, and Clay County Hospital. The Court's analysis, however, has shown that the interest, costs, and fees that the Lewises seek in relation to said judgments are unrecoverable under ERISA § 502(a)(1)(B). Further, because Annie has asserted and continues to assert her rights as a beneficiary, and any recovery by Herbert would be tantamount to double recovery.

Herbert no longer has constitutional standing in this case and is no longer a necessary party to this litigation. As such, the Court **DISMISSES** him **with prejudice**.

## V.    Annie Is Exempt from Exhausting Her Administrative Remedies on Count II

The question next becomes whether Annie failed to administratively exhaust her claims concerning Salem-Flora Radiology and the Bonutti Clinic.

"The text of 29 U.S.C. § 1132, providing for civil actions to redress violations of ERISA, does not address whether a claimant must exhaust [his] administrative remedies before filing suit in federal court." *Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 807 (7th Cir. 2000). *See also Call v. Ameritech Mgmt. Pension Plan*, No. Civ. 01-717-GPM, 2004 WL 483199, at *3 (S.D. Ill. Mar. 10, 2004). However, in light of ERISA § 503, codified at 29 U.S.C. § 1133,

directing employee benefit plans to provide adequate written notice of the reasons for denials of claims by plan participants and to create procedures for the review of such denials of claims, the Seventh Circuit interprets ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute.  *See Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 826 (7th Cir.1991).  "[T]he decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court."  *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138 (7th Cir.1997) (*quoting Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir.1996)).

In general, "implementing the exhaustion requirement enhances the ability of plan fiduciaries to expertly and efficiently manage their plans by preventing premature judicial intervention and because fully considered actions by plan fiduciaries may assist the courts when they must resolve controversies."  *Powell*, 938 F.2d at 826 (citing *Kross v. W. Elec. Co., Inc.*, 701 F.2d 1238, 1244 (7th Cir. 1983)).  Exhaustion benefits the district court by clarifying the issues and disputes before it.  *Lindemann*, 79 F.3d at 650.  Furthermore, exhaustion may result in the non-judicial settlement of the plan participant's claims.  *Id.*  Therefore, it is not lightly set aside.  That being said, the court may excuse an ERISA plaintiff's failure to exhaust administrative remedies where there is a lack of meaningful access to review procedures or where pursuing internal plan remedies would be futile.  *See Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1236 (7th Cir.1997); *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402 (7th Cir.1996); *Smith v. Blue Cross & Blue Shield United of Wis.*, 959 F.2d 655, 658-59 (7th Cir. 1992).

Here, Annie is excused from exhausting her administrative remedies with respect to the still-viable claims.  The Plan argues that Annie was or should have been well-aware of the

administrative process as it was clearly spelled out in the Summary Plan Description (hereinafter "SPD") and all EOBs.  The Court has scoured the record, however, and cannot find any EOB relating to Salem-Flora Radiology or all of the EOBs relating to the Bonutti Clinic.  The Court will not require Annie to have appealed payments that she possibly did not know the Plan had made.

The parties make much ado about whether Annie's claims were truly "pended" or denied, and both parties cite several exhibits to support their opposing contentions.  Having considered all of the evidence, the Court believes Annie's claims were "pended."  *See* note 2.  But, the Court also believes Annie was at the very least justifiably confused as to which claims had been paid so that she could appeal therefrom, creating a lack of a meaningful access to the Plan's review procedures.  Perhaps more importantly, the Court notes that it has been the Plan's contention for some time that Annie's claims have been fully paid.  It obviously continues to take this stance in the summary judgment phase.  The Court believes that, had Annie internally appealed the Plan's payment to Salem-Flora Radiology and the Bonutti Clinic, she would have been told that the Plan had already made all necessary payments.  In other words, any pursuit of the Plan's internal remedies would have been futile.

There exists no genuine issue of material fact on the exhaustion issue.

**VI.    The Lewises Cannot Sustain Claims on Counts III-VI**

ERISA § 502(c)(1) provides, in relevant part, as follows:

Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B) (2006).  In other words, to sustain a claim under ERISA § 502(c)(1), a participant must prove "(1) that the administrator was required by ERISA to make available to the participant the information the participant requested, and (2) that the participant requested and the administrator failed or refused to provide the information requested . . . ."  *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 622 (7th Cir. 1987) (affirming grant of defendants' motion for summary judgment because plaintiff failed to request "information" concerning the trust at issue or his rights thereunder); *Hakim v. Accenture U.S. Pension Plan*, 656 F. Supp. 2d 801, 821 (N.D. Ill. 2009).  "If these elements of standing to sue and an appropriate request are satisfied, the plan administrator's failure to provide the requested information to a participant or beneficiary carry severe consequences."  Ronald J. Cooke, *ERISA Practice and Procedure* § 8:28, p. 8-219 (2d ed. 2009).

Here, the Lewises have brought four claims for violation of ERISA § 502(c)(1).  Three of these claims may be dismissed out of hand.  Two (Counts IV and VI) are brought by Herbert.  However, for reasons discussed *supra*, Herbert does not have constitutional standing to be in this case.  Therefore, the Court **DISMISSES** Counts IV and VI **with prejudice**.  Like Herbert, Annie brings one claim against Aetna (Count III) and one claim against Sherwin Williams (Count V).  Annie, however, has not made any allegation or put forth any evidence that she made a request for information from Sherwin Williams.  ERISA § 502(c)(1) is explicitly predicated upon such a request for information.  Annie's failure to make such a request of Sherwin Williams dictates that the Court **DISMISS** Count V **with prejudice**.

All that remains is Annie's claim against Aetna.  In the operative complaint, Annie alleges that Aetna is liable for violation of ERISA § 502(c)(1) due to its "fail[ure] to respond to

14

the December 2, 2008 request for information regarding the *denial* of medical claims submitted

on behalf of Annie Lewis." (Doc. 27, p. 7, ¶ 28) (emphasis added). Indeed, Robbins' letter of

December 2, 2008, to Aetna sought "an explanation for the *denial* of each of [Annie's] claims."

(Doc. 75-13, p. 5). Since Aetna "pended" Annie's claims and never truly denied them, the

company first argues that it was not required to respond to Robbins' letter. The Court has

reviewed the entire record and believes Annie's claims were in fact "pended." That being said,

there is at least some evidence that Aetna told the Lewises that Annie's medical claims had been

denied. *See* note 2; (*see also* Doc. 75-7, p. 6) ("Your claim has been denied because information

requested about the claim was not received."). There is even greater evidence that Aetna had

told Annie's medical providers that her claims had been denied, (*see, e.g.*, Doc. 75-6), generating

a reasonable inference that Annie would have thought the same if she contacted her providers

before Aetna paid them. Aetna occasionally represented to the Lewises and Annie's medical

providers that Annie's claims had been denied. Even though the claims were in fact "pended,"

the Court will not deem the December 2 letter inadequate for using the same language that Aetna

occasionally employed. The Plan's reliance on a "denial prerequisite," espoused in *Kleinhans v.*

*Lisle Savings Profit Sharing Trust*, 810 F.2d 618 (7th Cir. 1987), is misplaced due to the

occasional representations that Aetna made to the Lewises and their creditors. *See* note 2.

Aetna's first argument therefore falls flat.

Aetna next argues that Annie cannot recover under ERISA § 502(c)(1) because she

cannot meet the first half of the *Kleinhans* test, i.e. Aetna was not required by ERISA to furnish

the information that Annie had requested. By its very terms, ERISA § 502(c)(1) is confined to

Subchapter I of ERISA, which spans 29 U.S.C. § 1001 through § 1191c. Indeed, nowhere in

Annie's summary judgment motion does she cite to an appropriate section of Subchapter I that

required Aetna to explain any denial of her claims upon demand.

Annie does cite to 29 U.S.C. § 1104, which sets forth the general standard of care governing ERISA fiduciaries. The Court, however, fails to see any link between the general fiduciary standards and the failure to comply statute at issue, especially considering Annie did not bring a claim for breach of fiduciary duty against Aetna.

Annie also cites to 29 U.S.C. § 1022(b) and § 1024(b)(1), which govern SPDs and their publication. Annie reasons that, since the standards governing SPDs are promulgated in Subchapter I and since the SPD at issue provides for an explanation if one's benefits are denied, Aetna violated ERISA § 502(c)(1). Aetna's SPD, however, is not a part of Subchapter I, at least in the sense that ERISA § 502(c)(1) contemplates. The Seventh Circuit has taken a restrictive view with respect to ERISA § 502(c)(1) and has not even allowed ERISA § 502(c)(1) to serve as a means to impose civil liability for violations of agency regulations. *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 406 (7th Cir. 1996). To enlarge the statute governing SPDs to include the contents of all SPDs created thereunder would not only fly in the face of *Wilczynski* and other relevant precedent but could open the floodgates of ERISA § 502(c)(1) litigation.

Put simply, Robbins' letter did not request the type of information referenced in ERISA § 502(c)(1).[5] The Court also finds that Robbins' letter was not specific enough in its request for purposes of ERISA § 502(c)(1). For these reasons, the Court **DISMISSES** Count III **with prejudice**.

---

[5]Almost every case involving any overlap between ERISA § 502(c)(1) and SPDs involves allegations that *the SPD itself* was not produced upon request. *See, e.g.*, *Hakim v. Accenture U.S. Pension Plan*, No. 08-cv-3682, 2010 WL 3257898, at *1 (N.D. Ill. Aug. 16, 2010); *Killian v. Concert Health Plan*, 651 F. Supp. 2d 770, 777 (N.D. Ill. 2009).

16

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** the Lewises' Motion for Summary

Judgment (Doc. 75).  The Court **GRANTS in part** and **DENIES in part** Defendants' Motion for

Summary Judgment (Doc. 76).  Specifically, the Court **GRANTS** summary judgment in favor of

Defendants and against the Lewises on Counts I, III, IV, V, and VI, thereby **DISMISSING**

Aetna and Sherwin Williams from this matter **with prejudice**.  Meanwhile, the Court **DENIES**

summary judgment on Count II as brought by Annie for the aforesaid reasons.  The Court,

however, **DISMISSES** Herbert from this matter **with prejudice**.  The Court **DIRECTS** the

Clerk of Court to enter judgment accordingly at the close of this case.

The Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Strike (Doc.

83).  The Court considered said motion while it researched, analyzed, and drafted the motions at

issue.  Specifically, to the extent the Court relied on any allegations or exhibits sought to be

stricken, as perhaps evidenced by their reference herein, the Court **DENIES** said motion.

Further, the Court **DENIES** Defendants' Motion for Leave to File an Answer (Doc. 80) to

Counts III-VI **as moot**.  Finally, the Court will address Defendants' Motion to Continue (Doc.

87) in a separate minute order.

**IT IS SO ORDERED.**
**DATED: October 29, 2010**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**